## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
**Miami Division**

Case No.:

DAMIAN R. JOSEFSBERG, individually
and on behalf of all others similarly situated,

    Plaintiff,

v.

UBER TECHNOLOGIES, INC.,
and CHECKR, INC.,

    Defendants.

_____/

Class Representation

**CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL**

## <u>CLASS ACTION COMPLAINT</u>

  Plaintiff, Damian R. Josefsberg, on behalf of himself and all others similarly situated, files this Class Action Complaint against Defendants, Uber Technologies, Inc. ("Uber") and Checkr, Inc. ("Checkr"), and based upon personal knowledge of facts pertaining to himself and, upon information and belief, based on the investigation of counsel as to all other matters, alleges the following:

### <u>INTRODUCTION</u>

  1. This Class Action Complaint is brought pursuant to Rule 23 of the Federal Rule of Civil Procedure by and on behalf of all persons who are or have been a victim of identity theft by an employee and/or contractor driving for Uber during the applicable limitations period.

  2. With this action, Damian R. Josefsberg seeks to hold Uber and Checkr (collectively the "Defendants") responsible for the harms caused by Defendants' negligent, unfair,

unconscionable, and deceptive practices with regard to their background checks and identity verifications of Uber drivers.

3.      Uber maintains a ride-sharing platform, similar to a taxi service, that allows users to download its mobile application to request rides from drivers in the area.

4.      Uber drivers are employees and/or contractors of Uber who, according to Uber, are required to undergo initial and routine follow-up background checks and identity verifications for the safety of its customers.  Uber drivers are not required to maintain any specialized licensure other than a common driver's license.

5.      Uber, however, does not conduct the aforementioned background checks or identity verifications in-house; instead, Uber outsources the background checks and identity verifications to Checkr, a technology company that specializes in such services.

6.      Despite its claims that every driver must pass the background check and identity verification before being permitted to drive for Uber, many drivers use false information and stolen identities and become Uber drivers.

7.      Checkr, which is contracted by Uber to conduct the background checks and identity verifications, consistently fails to properly screen the drivers or detect their use of stolen identities and then reports that drivers using stolen identities have cleared the background checks and identity verifications.

8.      Instead of verifying that each driver has cleared its background check and identity verification policies, Uber has confirmed that it does not maintain or receive the results of said background checks and identity verifications by Checkr or any other service provider.

9.      Moreover, Uber and Checkr both failed to notify Plaintiff that they were obtaining a background report on the Plaintiff as required under the Fair Credit Reporting Act.

10.     As a result, innocent people such as Mr. Josefsberg become victims of Defendants Uber and Checkr and are left with no choice but to deal with the consequences, which include without limitation the hiring and paying professionals to rectify their tax filings, credit reports, and other financial documents.

## PARTIES

11.     Plaintiff, Damian R. Josefsberg, is an individual and a resident of Miami-Dade County, Florida.

12.     Defendant, Uber Technologies, Inc., is a California corporation which maintains a registered agent in Florida and conducts substantial business activities on a regular and continuous basis nationwide and in Florida.

13.     Uber committed the torts subject of this Complaint in Florida by negligently allowing a driver to use Plaintiff's stolen identity in Florida.  And, Uber committed an intentional tort against Plaintiff causing injury in Florida, by employing the fraudulent business practice of claiming to background check drivers but not actually doing so such that an Uber driver was driving for Uber using Plaintiff's stolen identity in Florida.

14.     Defendant, Checkr, Inc., is a Delaware corporation that conducts substantial business activities on a regular and continuous basis nationwide and in Florida.

15.     Checkr committed the torts subject of this Complaint in Florida by negligently failing to perform a background check on an Uber driver and therefore facilitating that driver's use of Plaintiff's stolen identity in Florida.  And, Checkr committed an intentional tort against Plaintiff causing injury in Florida, by employing the fraudulent business practice of claiming to background check Uber drivers but not actually performing those checks such that a driver was driving for Uber using Plaintiff's a stolen identity in Florida.

## JURISDICTION AND VENUE

16.     This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA"), brought on behalf of Plaintiff and those similarly situated.  This Court has subject matter jurisdiction over this action under the Fair Credit Reporting Act ("FCRA") and pursuant to 28 U.S.C. §1331.

17.     This Court has original diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because Plaintiff and many members of the Class (as defined below) are citizens of states different from Defendants' home states and the aggregate amount in controversy in this action exceeds $5,000,000, exclusive of interests and costs, and there are more than 1,000 members in the proposed Class.

18.     Jurisdiction is also proper in this Court, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, because Plaintiff's FCRA claims arise under federal law.  This Court also has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendants, pursuant to Florida Statutes §§ 48.193(1)(a)(1), (2), and (6), because they conduct substantial business in this District; some of the actions giving rise to the Complaint took place in this District; and some of Plaintiff's claims arise out of Defendants' operating, conducting, engaging in, or carrying on a business or business venture, or having an office or agency, in the State of Florida, committing a tortious act in this state, and causing injury to Plaintiff in this state arising out of Defendants' acts and omissions outside this state; and at or about the time of such injuries, Defendants were engaged in solicitation or service activities within this state. This Court also has personal jurisdiction over Defendants because they consented to jurisdiction by registering to do business in Florida. This Court has pendant or supplemental personal jurisdiction over the claims of non-Florida Class members.

20.     Furthermore, Uber has marketed, advertised, sold, and performed its services within this District, and Checkr knowingly performs its services for residents of this District. Indeed, Checkr performs the background checks for Uber for drivers residing in and applying to drive in Florida.  Checkr's misconduct with respect to those background checks is the subject of this lawsuit.  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction.

21.     Venue is proper in this District, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendants have caused harm to Class members residing in this District, and Defendants regularly conduct business in this District.

**FACTUAL BACKGROUND**

22.     Uber is a technology company that, among other things, develops, markets, and operates a mobile-app-based ride sharing transportation network (the "Uber App").

23.     Similar to a taxi service, the Uber App allows users to submit a trip request on their smartphone, which is transmitted to nearby Uber drivers for acceptance and completion.

24.     Uber's business model depends on drivers, who are required to provide their personal identification information and undergo a background screening process before they can begin driving for Uber.

25.     Uber's website contains an extensive page dedicated to "Driver Screening."  *See* https://www.uber.com/us/en/ride/safety/driver-screening/.  Among the policies provided on the Driver Screening webpage, Uber warrants[1] the following:

---

[1] The *Driver Screening* page states that the information contained therein applies all to drivers using Uber in the 50 U.S. states and Washington, DC.

5

a. **Driver screening**.  Everyone who drives with Uber is screened before their first trip. In addition, Uber reruns these driver screenings[] every year and uses technology to look for issues in between.  It's part of our commitment to help keep you safe when you request a ride with Uber.

b. **Drivers are background checked before their first trip**.  Prospective drivers must undergo a multi-step safety screen that checks for issues including, but not limited to, driving violations, impaired driving, and violent crime.

c. **Drivers must pass an annual check to continue accessing the app**. Uber proactively reruns driving[] and criminal history checks every year to ensure that drivers continue to meet our standards.

d. **Assuming someone else's identity is prohibited**.  Drivers are periodically asked to take a photograph of themselves, which we match against their on-file identification to help make sure the right driver is behind the wheel.

26.     To conduct the background screenings and identity verifications for its drivers, Uber contracts with Checkr to perform those services for Uber.

27.     Checkr is a technology company that offers background checks and identity verification services through its software-based platform to employers across the United States.

28.     Among its advertised services, Checkr's product mix includes criminal background checks, employment verifications, driving record checks, drug and health screenings, education verifications, and international background checks.

29.     On or about June 19, 2022, Mr. Josefsberg learned that Uber filed a 1099-NEC in his name.

30.     Mr. Josefsberg did not receive the 1099-NEC from Uber.  Rather, Mr. Josefsberg learned of the 1099-NEC form through an IRS transcript reflecting that Uber had issued the 1099 under Mr. Josefsberg's social security number for compensation in the amount of $1,236.00.

31.     The 1099-NEC does not list Mr. Josefsberg's street address.  Instead, the 1099-NEC states "UNKNOWN" as the street address, and only includes "Weston, FL 33327" as the

city, state, and zip code for Mr. Josefsberg.  It is unclear whether this refers to Mr. Josefsberg's former Weston address.

32.     Mr. Josefsberg has never been a driver for Uber, nor has he ever been an employee or independent contractor for Uber.

33.     Suspecting that an Uber driver had permitted a driver to use his identity, Mr. Josefsberg, through the undersigned counsel, sent a letter to Uber on August 15, 2022, demanding that it cease all Uber driver accounts using Mr. Josefsberg's name, social security number, or other personal identification information.

34.     In the same correspondence, Mr. Josefsberg requested that Uber provide all documents related to any background checks and identification verification in connection with any Uber driver accounts using Mr. Josefsberg's name, social security number, or other personal identification information.  Mr. Josefsberg also requested that Uber provide all IRS 1099 forms or W-9 forms, issued in Mr. Josefsberg's name, along with any supporting documents thereto.  *See id.*

35.     On September 8, 2022, Uber responded to Mr. Josefsberg's August 15 correspondence, stating that it identified an account using Mr. Josefsberg's personal identification information.  However, to proceed with removing Mr. Josefsberg's personal identification information from the fraudulent account, Uber required Mr. Josefsberg to send various personal, sensitive documents to Uber, including a photograph of the 1099 form he received, a copy of his photograph ID, a photograph of himself holding the photograph ID, and a Federal Trade Commission ("FTC") Identity Theft Report.

36.     In the September 8, 2022 correspondence, Uber also represented to Mr. Josefsberg that "[b]ackground checks are performed by Checkr, Inc., a third-party background check

provider.  Obtaining any documents related to background checks will need to be done through Checkr." *Id.*

37.     Mr. Josefsberg's attorneys responded to Uber's correspondence on September 12, 2022, complying with Uber's request for documents and further renewed Mr. Josefsberg's request for documents pertaining to the fraudulent account and any IRS forms and supporting documents issued in his name.

38.     Specifically, Mr. Josefsberg requested any documents and correspondence between Uber and Checkr related to any "background check or identity verification that Checkr, Inc. performed for and provided to Uber associated with any individual using Mr. Josefsberg's name, social security number, or other personal identifiable information."

39.      Mr. Josefsberg also requested that Uber confirm whether it possesses such documents, and "how Uber would confirm a contractor's background and/or identify prior to the contractor's performing services for which Uber would provide compensation, if not through documents or correspondence from Checkr." *Id.*

40.     On or about September 13, 2022, Mr. Josefsberg submitted a request to Checkr for all documents relating to the background check or identity verification performed on the fraudulent account.

41.     On September 15, 2022, Mr. Josefsberg again requested confirmation that Uber removed his personal identification information from the fraudulent account.  Mr. Josefsberg again renewed his prior requests for documents related to the fraudulent account and all documents and correspondence pertaining to the background check and identity verification for the account.

42.     On September 20, 2022, Uber admitted to Mr. Josefsberg that it does not possess any of the requested documents related to the background check or identity verification in

connection with the fraudulent account, and that Mr. Josefsberg needs to contact Checkr to retrieve said documents.

43.     Both Uber and Checkr have failed to provide Mr. Josefsberg with the background report that they ordered and prepared using his name and social security number despite Plaintiff's written request served on each Defendant.

44.     Finally, on September 26, 2022, Uber confirmed that it deactivated the fraudulent account in Mr. Josefsberg's name to prevent any further trips from being completed.

45.     Despite having sufficient proof that it filed an improper 1099-NEC in Mr. Josefsberg's name, Uber has not corrected its filing to date, nor has Uber complied with Mr. Josefsberg's request for documents and correspondence related to any background check or identity verification for the fraudulent account.

46.     Further, Uber materially misrepresents and has failed to comply with the background check and identity verification procedures and policies listed on its *Driver Screening* webpage, as it claims to not have any documents or correspondence related to any background check or identity verification for the fraudulent account.

47.     At all relevant times, Uber knew, or reasonably should have known, of the importance of properly screening its drivers and abiding by its background check and identification verification policies and procedures.

48.     Likewise, Uber knew, or reasonably should have known, of the foreseeable consequences of its failure to properly screen its drivers, as many instances of substantially similar conduct has been reported in the past.[2]   Reports of drivers using false identities to obtain

---

[2] Lukas I. Alpert, *Nationwide rideshare and delivery scam put thousands of unqualified Uber and Lyft drivers onto the road with stolen identities*, Market Watch, Dec. 27, 2021, available at: https://www.marketwatch.com/story/a-nationwide-rideshare-and-delivery-scam-put-thousands-

employment with Uber has become commonplace, as many of these drivers would be unable to become drivers due to their prior criminal history, unsatisfactory driving record, immigration status, or lack of credit worthiness, among other things.

49.    Checkr, while performing its background checks and identity verification services for Uber, similarly failed to discover that the identity thief was not Mr. Josefsberg.

50.    Checkr did not provide any report to Uber regarding the individual for whom it was engaged to perform the background check, as evidenced by its failure to distribute the underlying documentation to Uber, and the incorrect and missing information on the 1099-NEC issued in Mr. Josefsberg's name.

51.    The Defendants systematically violate section 1681b(b)(3) of the FCRA by ordering and/or preparing consumer reports without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA, effectively leaving the person who is the subject of the report without any opportunity to prevent the preparation of the report, to stop any identity theft occurring with the unauthorized use of his or her personal information, or to even know who prepared the background report about him or her.

52.    The FCRA regulates "consumer reports" for employment purposes, commonly called "background reports."   Congress included in the FCRA a series of due-process-like

---

of-unqualified-drivers-onto-the-road-with-stolen-identities-11640209474 (last accessed Oct. 27, 2022); Dara Kerr, *Some Uber drivers use bogus identities and shared accounts*, CNET, Nov. 26, 2019, available at: https://www.cnet.com/tech/mobile/uber-drivers-using-fake-identities-isnt-just-a-london-problem/ (last accessed Oct. 17, 2022); Associated Press, *2 Plead Guilty in Ride-Hailing Fake Driver Account Scheme*, U.S. News, Mar. 24, 2022, available at: https://www.usnews.com/news/best-states/massachusetts/articles/2022-03-24/2-plead-guilty-in-ride-hailing-fake-driver-account-scheme (last accessed Oct. 17, 2022).

protections that impose strict procedural rules on "users of consumer reports," such as Uber and Checkr.  This action involves Defendants' systematic violations of those important rules.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff Damian R. Josefsberg brings this Class Action against Uber and Checkr, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and/or (b)(3), on behalf of himself and all others similarly situated as members of the following class (the "Class"):

> For the maximum time period allowable by law (the "Class Period"), any person or any person's legal representative who, in violation of Federal law or Florida law, is or has been a victim of identity theft by an employee and/or contractor driving for Uber resulting in the use of that person's identity to work for Uber.

54.     Plaintiff is willing and prepared to serve the Class in a representative capacity with all the obligations and material duties necessary.  Plaintiff will fairly and adequately represent and protect the interests of the Class and have no interests adverse to or in conflict with the interests of any of the other members of the Class.

55.     Plaintiff's interests are co-extensive with and not antagonistic to those of absent members within the Class.  Plaintiff will undertake to represent and protect the interests of absent members within the Class and will vigorously prosecute this action.

56.     Plaintiff has engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent members of the Class.

57.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

58.     The Class may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

59.     The Class may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, would be dispositive of interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

60.     The interest of members within the Class in individually controlling the prosecution of separate actions is theoretical and not practical.  The Class has a high degree of similarity and is cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

61.     The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class, or, if such notice is not practicable, by the best notice practicable under the circumstances including, among other things, email, publication in major newspapers, and the internet.

62.     The persons comprising the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes in good faith that the Class includes thousands of persons, of which will be identifiable from records maintained by Defendants.  Plaintiff has been able to deduce that the Class contains at least 1,000 members from the number of online complaints concerning the identity theft alleged herein and Uber's website dedicated to collecting complaints concerning this same form of identity theft.

63.     Indeed, Uber's and Checkr's negligence and failure to comply with FCRA results in the identity theft alleged in this Complaint so frequently that Uber has a "help" website[3] dedicated to collecting complaints by victims of such identity theft.  Indeed, the existence of the Uber website for victims that received a 1099 form even though they never drove for Uber establishes that many potential Class members must have suffered the same form of harm facilitated by Uber and Checkr, as described herein.

64.     The questions of law and fact common to the claims of Plaintiff and the Class predominate over any questions of law and fact affecting only individual Class members.

65.     Defendants have acted with respect to Plaintiff and all Class members in a manner generally applicable to each of them.  There is well-defined community of interest in the questions of law and fact affecting the Class which satisfies the requirements of Rule 23.

66.     Questions of law and fact common to the Plaintiff and Class include, but are not necessarily limited to, the following:

    a.  Whether Plaintiff and members of the Class were victims of identity theft and were otherwise harmed at the hands of an employee/contractor driving for Uber.

    b.  Whether Plaintiff and members of the Class were victims of identity theft and were otherwise harmed due to Uber's and Checkr's violations of the FCRA in their failure to disclose to Plaintiff and Class members that background reports were being prepared on them, failure to obtain their consent to prepare a background report on them, and failure to give them the opportunity to prevent the preparation of those background reports and/or to request a copy of the resulting reports.

    c.  Whether Defendants engaged in unfair and deceptive trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") or similar statutes in other states that allowed identity theft and other harms caused to be committed as to Plaintiff and Class members.

---

[3]     https://help.uber.com/driving-and-delivering/article/i-do-not-drive-with-uber-but-i-received-a-1099-tax-document-from-uber?nodeId=edd5d179-cbd5-49b7-ae55-19d865cd9efa

    d.   Whether Defendants had a duty to properly conduct background checks and identity verifications of the forementioned drivers and/or take appropriate actions to protect the public from misrepresentations of prospective or existing Uber drivers that reasonably could have been discovered by a proper background check and identity verification.

    e.   Whether Defendants failed to properly conduct background checks and identification verifications of the forementioned drivers and/or take appropriate actions to protect the public from misrepresentations of prospective or existing Uber drivers that reasonably could have been discovered by a proper background check and identity verification.

    f.   Whether Defendant Uber has caused harm by issuing incorrect 1099 forms in the name of the Plaintiff and the Class members

67.    The claims of Plaintiff are typical of the Class in that each member of the Class was a victim of identity theft at the hands of an employee and/or contractor driving for Uber, facilitated by Defendants' failure to properly conduct background checks and identity verification on said drivers and/or take appropriate actions to protect the public from misrepresentations of prospective or existing Uber drivers that reasonably could have been discovered by a proper background check and identity verification and/or by making disclosures and obtaining consent required under the FCRA.  Proof of a common or single set of facts will establish the right of each Class member to recover.

68.    Plaintiff is cognizant of, and determined to faithfully discharge, his duties to the absent Class members and Class representatives.

69.    Plaintiff will fairly and adequately protect and represent the interests if the entire Class because Plaintiff has suffered a similar loss as that of the Class members.  Accordingly, Plaintiff is directly interested in the prosecution and outcome of this Action.

70.    Further, Plaintiff's counsel has substantial experience in the fields of complex civil litigation and class action litigation.

71.     The prosecution of separate claims by individual Class members would create a risk of adjudication concerning individual claims that would, as a practical matter, be dispositive of the interests of other Class members who are not parties to the adjudications or substantially impair or impede the ability of such other Class members to protect their interests.

72.     There are no unusual difficulties likely to be encountered in the management of this action as a class suit that could not be managed by the Court.  The advantages of maintaining this action as a class suit far outweigh the expense and waste of judicial resources that would result from hundreds, if not thousands, of separate adjudications of these issues for each of the Class members.

73.     Defendants have acted and refused to act on grounds generally applicable to all Class members, thereby making declaratory relief requested below appropriate.

74.     A class action is a superior method for the fair and efficient adjudication of the controversy.  The interest of the Class members in individually controlling the prosecution of separate claims against Defendants is slight because the cost of litigation compared to the possible outcome is negligible.  Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims.  There is no plain, speedy, or adequate remedy other than by maintenance of this Class Action, nor is it economically feasible to pursue remedies other than through a class action.  Consequently, there would be a failure of justice but for the maintenance of the present Class Action.

75.     Indeed, it would be nearly impossible for all members of the Class to individually seek redress for the wrongs at issue in this action.  Even if the Class members could afford the financial strain of individually prosecuting their clams, the judicial system could not.  Paired with

the threat of inconsistent or contradictory judgments and the waste of judicial resources, it is clear that class action treatment is appropriate when weighed against the alternative.

76.     In sum, class action treatment is proper because it will result in substantial benefits to the litigants, courts, and public by permitting the Court to address and resolve Plaintiff's and the Class's claims in a single forum based upon a single presentation of proof.

77.     Plaintiff respectfully requests the Court enter an order certifying that this action shall be maintained as a class action.

## COUNT I – NEGLIGENCE

### (Against Uber)

78.     Plaintiff incorporates by reference paragraphs 1-77 of this Complaint as though fully set forth herein.

79.     This is an action by Plaintiff, on behalf of himself and the Class members, against Uber for damages stemming from its negligent processing of background checks and identity verification services for its drivers and its issuance of incorrect 1099 forms.

80.     Uber had a duty to exercise reasonable care in fully performing and complying with the background check and identity verification policies and procedures warrantied on its *Driver Screening* webpage and issuing accurate and complete 1099s forms for its drivers

81.     Among its duties, Uber was required to perform a background check and identity screening on the identity thief who used Plaintiff's name and other personal identification information, and other Uber drivers who used such information of Class members, and issue accurate and complete 1099 forms for its drivers.

82.     Uber was subject to an independent duty, untethered to any contract between Plaintiff and Uber.

16

83.    Uber has full knowledge of the importance of properly performing background checks and identity verifications of its drivers, and its failure to properly perform the forementioned background checks and identity verifications for its drivers presents an unreasonable risk of harm to others, such as Plaintiff, Class members, and Uber's customers, even if the harm occurs through the criminal acts of a third-party.

84.    Uber knew or reasonably should have known that its failure to comply with its own background check and identity verification policies and procedures would likely result in harm to others, including Plaintiff, Class members, and Uber's customers.

85.    Uber breached its duty by failing to comply with the policies and procedures listed on its *Driver Screening* webpage, not completing a proper background check and identity verification on the individual who stole Mr. Josefsberg's identity and failing to ascertain the identity of the driver who stole Mr. Josefsberg's identity.

86.    As a direct and proximate result of Uber's breach, Plaintiff has and will continue to suffer damages, including but not limited to incurring costs associated with (i) hiring and paying professionals to rectify the incorrect tax filings, (ii) adverse effects on his tax filing status, (iii) filing and pursuing a complaint for identity theft with the FTC, and (iv) other adverse effects of identity theft.

87.    Due to the damages caused by Uber's breach, Plaintiff has retained the undersigned attorneys and agreed to pay a reasonable fee for their services.

WHEREFORE, Plaintiff Damian R. Josefsberg, on behalf of himself and the Class members, demands judgment against Defendant Uber for damages, interest, costs, attorneys' fees based on the creation of a common fund recovery, and any other relief the Court deems just and proper.

## COUNT II – NEGLIGENCE

### (Against Checkr)

88.     Plaintiff incorporates by reference paragraphs 1-77 of this Complaint as though fully set forth herein.

89.     This is an action by Plaintiff, on behalf of himself and the Class members, against Checkr for damages stemming from its negligent processing of background checks and identity verification services for its drivers and/or failure to provide the results of such services to Uber.

90.     Checkr had a duty to exercise reasonable care in fully performing its background checks and identity verifications in connection with screening Uber drivers.

91.     Among its duties, Checkr was required to perform a background check and identity screening on the identity thief using Plaintiff's name and other personal identification information.

92.     Checkr was subject to an independent duty, untethered to any contract between Plaintiff and Checkr.

93.     Checkr has full knowledge of the importance of properly performing background checks and identity verifications of Uber drivers, and its failure to properly perform the forementioned background checks and identity verifications for Uber drivers, and/or failure to provide the results of such services to Uber, presents an unreasonable risk of harm to others, such as Plaintiff, Class members, and Uber's customers, even if the harm occurs through the criminal acts of a third-party.

94.     Checkr knew or reasonably should have known that its failure to properly perform background checks and identity verifications of Uber drivers, and/or its failure to provide the

results of such services to Uber, would likely result in harm to others, including Plaintiff, Class members, and Uber's customers.

95.     Checkr breached its duty by failing to properly perform a background check and identity verification on the individual who stole Mr. Josefsberg's identity and failing to ascertain the true identity of the driver who stole Mr. Josefsberg's identity and/or failing to provide the results of such services to Uber.

96.     As a direct and proximate result of Checkr's breach, Plaintiff has and will continue to suffer damages, including but not limited to costs associated with (i) hiring and paying professionals to rectify the incorrect tax filings, (ii) adverse effects on his tax filing status, (iii) filing and pursuing a complaint for identity theft with the FTC, and (iv) other adverse effects of identity theft.

97.     Due to the damages caused by Checkr's breach, Plaintiff has retained the undersigned attorneys and agreed to pay a reasonable fee for their services.

WHEREFORE, Plaintiff Damian R. Josefsberg, on behalf of himself and the Class members, demands judgment against Defendant Checkr for damages, interest, costs, attorneys' fees based on the creation of a common fund recovery, and any other relief the Court deems just and proper.

## COUNT III

## FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF THE FCRA

## (15 U.S.C. §§ 168lb(b)(2)(A))

### (Against all Defendants)

98.     Plaintiff incorporates by reference paragraphs 1-77 of this Complaint as though fully set forth herein. Defendants are "persons" as defined by Section 1681a(b) of the FCRA.

99.    Plaintiff and Class members are "consumers" within the meaning Section 1681a(c) of the FCRA, because they are "individuals."

100.    Section 1681a(d)(1)(B) of the FCRA defines "consumer report" as

> any oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for . . . employment purposes.

> (B) employment purposes[.]

Thus, a credit and background report such as the report ordered by Uber and prepared by Checkr qualifies as a consumer report.

101.    Section 1681b(b) of the FCRA provides, in relevant part:

> Conditions for furnishing and using consumer reports for employment purposes

> (2) Disclosure to consumer

> (A) In general
> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless-

> i.    a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> ii.    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

102.    As described above, Plaintiff was informed by Uber, that in evaluating him and other Class members for employment, Uber procured and caused Checkr to prepare credit and background reports (*i.e.*, a consumer report, as defined by 15 U.S.C. § 1681a(d)(l)(B)).

103.    Defendants did not obtain Plaintiff or Class members' consent prior to preparing such report because Defendants did not verify the identities of the job applicants on whom it was ordering or performing background reports.

104.    For that same reason, Defendants did not provide Plaintiff or Class members with any disclosures, much less the clear disclosures required under the FCRA.

105.    Under the FCRA, it is unlawful to procure or caused to be procured, a consumer report or investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

106.    Failure to provide any disclosure to Plaintiff and the Class members violates § 168lb(b)(2)(A) of the FCRA.

107.    Defendants acted in deliberate or reckless disregard of their obligations and the rights of consumers, including Plaintiff and class members. Defendants' willful conduct is reflected by, among other things, the following facts:

(a) Defendants are large corporations with access to legal advice;

(b) Defendants required a purported authorization to perform credit and background checks in the employment process which, although defective, evidences Defendants' awareness of and willful failure to follow the governing laws concerning such authorizations;

(c) despite knowledge of the consumer protections afforded to prevent unauthorized use of a consumer's background report, Defendants did not contact Plaintiff or the Class members to verify their identities and/or to ensure that they were running background reports for the correct people,

(d) Indeed, Defendants did not make any effort to confirm that they had Plaintiff or Class members' authorization to order or prepare the background reports and to prevent identity theft that occurred here; and

(e) The plain language of the statute unambiguously indicates that failure to obtain consent and provide notice to the actual consumer whose background report is being prepared violates the disclosure and authorization requirements of the FCRA.

108.    Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Plaintiff alleges that Defendants have a policy and practice of procuring investigative consumer reports or causing investigative consumer reports to be procured for consumers, even those that never applied for a job with Uber, without informing such consumers of their right to request a summary of their rights under the FCRA at the same time as the disclosure or explaining that an investigative consumer report may be made.  Pursuant to that policy and practice, Defendants procured investigative consumer reports or caused investigative consumer reports to be procured for Plaintiff and Class members, as described above, without informing class members of their rights under the FCRA.

109.    Accordingly, Defendants willfully violated and continue to violate the FCRA including, but not limited to, §§ 168lb(b)(2)(A).  Defendants' willful conduct is reflected by, among other things, the facts set forth above.

110.    As a result of Defendants' illegal procurement of credit and background reports by way of their inadequate disclosures, as set forth above, Plaintiff and Class members have been injured including without limitation by having their identities stolen and having their privacy and statutory rights invaded in violation of the FCRA.

111.    Plaintiff on behalf of himself and all Class members seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages, actual damages, punitive damages, injunctive and equitable relief and attorneys' fees and costs.

112.    In the alternative to Plaintiff's allegations that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o, including actual damages and attorneys' fees and costs.

WHEREFORE, Plaintiff Damian R. Josefsberg, on behalf of himself and the Class members, requests that this Court enter a judgment against Defendants for statutory damages, compensatory damages, attorneys' fees, interest, and costs, and grant such other relief as this Court deems appropriate and just.

## COUNT IV – VIOLATION OF FDUTPA AND ALL OTHER APPLICABLE STATE UNFAIR AND DECEPTIVE TRADE PRACTICES STATUTES

### (Against Uber)

113.    Plaintiff incorporates by reference paragraphs 1-77 of this Complaint as though fully set forth herein.

114.    This is action by Plaintiff, on behalf of himself and the Class, against Uber for damages, plus attorneys' fees and court costs, pursuant to the Florida Deceptive and Unfair Trade

Practices Act ("FDUTPA"), Florida Statutes §§ 501.201, *et seq*., and similar applicable statutes in in all other states. [4]

115.    Plaintiff meets the definition of a "person" as defined by FDUTPA and similar applicable statutes in states outside Florida.

116.    Uber is engaged in "trade or commerce" in Florida as defined by FDUTPA and similar applicable statutes in states outside Florida.

117.    In violation of FDUTPA and similar applicable statutes in states outside Florida, Uber engaged in unfair, deceptive, and unconscionable acts, practices, or methods of competition in the conduct of its trade or commerce by failing to properly conduct background checks and identity verifications of Uber drivers, and/or take appropriate actions to protect the public from misrepresentations of prospective or existing Uber drivers that reasonably could have been discovered by a proper background check and identity verification, and issuing complete and accurate 1099 forms, resulting in foreseeable harm to the public.

118.    Uber failed to verify the true identity of the individual who represented to be Plaintiff in applying to become a driver for Uber, despite its false representations that it follows the background check and identity verification policies and procedures warrantied on *its Driver Screening* webpage, and failed to issue complete and accurate 1099 forms.

---

[4] All 50 states have consumer protection laws that prevent unfair and deceptive trade practices and allow for recovery of actual damages, at a minimum.  Many states' consumer protection laws allow for recovery of damages, civil penalties, and attorneys' fees.  Because Uber and Checkr conduct business in all 50 states and are carrying out these practices in every state in which they transact business, all Class Members will be able to recover under their state's respective consumer protection statute.  Accordingly, the allegations herein of Uber's and Checkr's unfair and deceptive trade practices will be applied to Class claims under all applicable state statutes prohibiting such practices.

119.    Due to Uber's failure to abide by its own background check and identity verification policies and procedures and failure to issue complete and accurate 1099 forms, Uber allowed an individual to assume Plaintiff's identity in driving for Uber.

120.    The acts described herein are unlawful, in violation of public policy, immoral, unethical, oppressive, fraudulent, and/or unscrupulous, and thereby constitute unfair, unlawful, and/or deceptive business practices in violation of FDUTPA and similar applicable statutes in states outside Florida.

121.    As a direct and proximate result of Uber's unfair, unlawful and/or deceptive business practices described herein, Plaintiff has been aggrieved and suffered an injury in fact because Uber has obtained valuable property, money and/or services at the expense of Plaintiff, including but not limited to incurring costs associated with (i) hiring and paying professionals to rectify the incorrect tax filings, (ii) adverse effects on his tax filing status, (iii) filing and pursuing a complaint for identity theft with the FTC, and (iv) other adverse effects of identity theft.

122.    Plaintiff is entitled to and seeks such relief as may be necessary to restore to him the money and property which Uber has acquired, or of which Plaintiff has been deprived, by means of the above-described unfair, unlawful, and/or deceptive business practices.

123.    Plaintiff is further entitled to and seeks a declaration that the above-described business practices are unfair, unlawful, and/or deceptive, and injunctive relief preventing Uber from engaging in any of the above-described unfair, unlawful, and/or deceptive business practices in the future.

124.    As a result of the unfair, unlawful, and/or deceptive business practices described herein, Plaintiff has suffered damages and will continue to suffer irreparable harm unless Uber is restrained from continuing to engage in said unfair, unlawful, and or deceptive business practices.

125.     Due to the damages caused by Uber's violation of FDUTPA and similar applicable statutes in states outside Florida, Plaintiff has retained the undersigned attorneys and agreed to pay a reasonable fee for their services, for which Uber is liable pursuant to Florida Statutes § 501.2105 and similar applicable statutes in states outside Florida.

126.     Reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action are requested based upon the creation of a common fund recovery and based upon the foregoing statutes.

WHEREFORE, Plaintiff Damian R. Josefsberg, on behalf of himself and the Class, demands judgment against Defendant Uber for actual damages, interest, court costs, and attorneys' fees pursuant to the creation of a common fund recovery, Florida Statutes § 501.2105, and similar applicable statutes in all other states, and any other relief the Court deems just and proper.

## COUNT V – VIOLATION OF FDUTPA AND ALL OTHER APPLICABLE STATE UNFAIR AND DECEPTIVE TRADE PRACTICES STATUTES

### (Against Checkr)

127.     Plaintiff incorporates by reference paragraphs 1-77 of this Complaint as though fully set forth herein.

128.     This is action by Plaintiff, on behalf of himself and the Class, against Checkr for damages, plus attorney's fees and court costs, pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes §§ 501.201, *et seq*., and similar applicable statutes in in all other states.

129.     Plaintiff meets the definition of a "person" as defined by FDUTPA and similar applicable statutes in states outside Florida.

130.     Checkr is engaged in "trade or commerce" in Florida as defined by FDUTPA and similar applicable statutes in all other states.

26

131.    In violation of FDUTPA and similar applicable statutes in states outside Florida, Checkr engaged in unfair, deceptive, and unconscionable acts, practices, or methods of competition in the conduct of its trade or commerce by failing to properly conduct background checks and identity verifications of Uber drivers, and/or failing to provide the results of such services to Uber, resulting in foreseeable harm to the public.

132.    Specifically, Checkr failed to verify the true identity of the individual who represented to be Plaintiff in applying to become a driver for Uber.

133.    Due to Checkr's failure to ascertain the identity of the individual using Plaintiff's personal identification information, Checkr allowed an individual to assume Plaintiff's identity in driving for Uber.

134.    The acts described herein are unlawful, in violation of public policy, immoral, unethical, oppressive, fraudulent, and/or unscrupulous, and thereby constitute unfair, unlawful, and/or deceptive business practices in violation of FDUTPA and similar applicable statutes in states outside Florida.

135.    As a direct and proximate result of Checkr's unfair, unlawful and/or deceptive business practices described herein, Plaintiff has been aggrieved and suffered an injury in fact because Checkr has obtained valuable property, money and/or services at the expense of Plaintiff, including but not limited to incurring costs associated with (i) hiring and paying professionals to rectify the incorrect tax filings, (ii) adverse effects on his tax filing status, (iii) filing and pursuing a complaint for identity theft with the FTC, and (iv) other adverse effects of identity theft.

136.    Plaintiff is entitled to and seeks such relief as may be necessary to restore to him the money and property which Defendant has acquired, or of which Plaintiff has been deprived, by means of the above-described unfair, unlawful, and/or deceptive business practices.

137.    Plaintiff is further entitled to and seeks a declaration that the above-described business practices are unfair, unlawful, and/or deceptive, and injunctive relief preventing Checkr from engaging in any of the above-described unfair, unlawful, and/or deceptive business practices in the future.

138.    As a result of the unfair, unlawful, and/or deceptive business practices described herein, Plaintiff has suffered damages and will continue to suffer irreparable harm unless Checkr is restrained from continuing to engage in said unfair, unlawful, and or deceptive business practices.

139.    Due to the damages caused by Checkr's violation of FDUTPA and similar applicable statutes in states outside Florida, Plaintiff has retained the undersigned attorneys and agreed to pay a reasonable fee for their services, for which Checkr is liable pursuant to Florida Statutes § 501.2105 and similar applicable statutes in all other states.

140.    Reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action are requested based upon the creation of a common fund recovery and based upon the foregoing statutes.

WHEREFORE, Plaintiff Damian R. Josefsberg, on behalf of himself and the Class, demands judgment against Defendant Checkr for actual damages, interest, court costs, and attorneys' fees pursuant to the creation of a common fund recovery, Florida Statutes § 501.2105, and similar applicable statutes in all other states, and any other relief the Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Damian R. Josefsberg, individually and on behalf of Class members proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Defendants, Uber Technologies, Inc. and Checkr, Inc., as follows:

A.       For an Order certifying this action as a class action and appointing Plaintiff and the undersigned counsel to represent the Class;

B.       For an award of actual damages, compensatory damages, statutory damages, punitive damages, and statutory penalties under the FCRA, in an amount to be determined;

C.       For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to, among other things: (1) the failure to properly conduct background checks and identity verifications of Uber drivers and/or provide the results of such services to Uber, and/or the failure to take appropriate actions to protect the public from misrepresentations of prospective or existing Uber drivers that reasonably could have been discovered by a proper background check and identity verification; (2) the failure to obtain authorization, to notify and/or to provide clear disclosures, as required under the FCRA, for consumers on whom Uber and Checkr were performing background checks using their names and social security numbers; (3) the facilitation of the theft of Plaintiff's and the Class members' identities by employees/contractors driving for Uber; and (4) the refusal to promptly correct and disclose any and all incorrectly filed IRS forms or other tax documents;

D.       For injunctive relief requiring Defendants to provide Plaintiff and all Class members continuous credit monitoring services, periodic credit reporting, and credit repair services, and requiring Uber to file with the IRS and all applicable tax authorities corrected tax forms as to Plaintiff and all Class members.

E.       For an award of costs of suit and attorneys' fees, as allowable by law; and

F.       For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated:  December 5, 2022.

Respectfully submitted,

DAMIAN & VALORI LLP | CULMO
TRIAL ATTORNEYS, P.A.
*Counsel for Plaintiff*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone:     (305) 371-3960
Facsimile:     (305) 371-3965

By: */s/ Kenneth Dante Murena*
        Kenneth Dante Murena, Esq.
        Florida Bar No. 147486
        Email:  kmurena@dvllp.com
        Connor D. Healey, Esq.
        Florida Bar No. 1030797
        Email:  chealey@dvllp.com